[No. 3008.   April 17, 1926.   Rehearing Denied

July 3, 1926.]

HARKEY et al. v. SMITH et al.

[247 Pac. 550.]

### SYLLABUS BY THE COURT

1. The arid region doctrine, in regard to appropriations of water, has been modified in this jurisdiction by statute (chapter 49, Laws 1907; sections 5654 to 5729, Code 1915), so that here the right to the use of water, both as to volume and the periods of annual use, is regulated either by the permit of the state engineer or the decrees of the courts.

2. Questions not saved in the court below will not ordinarily be noticed here.

---

[1]   4CJ p. 1143 n. 10.   [2]   13CJ p. 775 n. 91.

Harkey et al. v. Smith et al., 31 N. M. 521

Appeal from District Court, Eddy County; Hatch, Judge.

Suit by D. R. Harkey and others against Julian Smith and another for an injunction. Decree for defendants, and plaintiffs appeal. Reversed and remanded, with directions.

C. J. Roberts, of Santa Fé, E. P. Bujac, of Carlsbad, and S. D. Stennis, of Dallas, for appellants.

Robert C. Dow, of Carlsbad, for appellees.

OPINION OF THE COURT

PARKER, C. J.    Plaintiffs (appellants) brought suit for an injunction against defendants (appellees) to restrain them from diverting water from the Black river system in Eddy county, the plaintiffs claiming to own 18 1-3 second feet of said water, and alleging that defendants were diverting 13½ second feet of said water, while they owned but one-fifth of one second foot of the same.    Defendants answered, denying the allegations of the complaint, except that they owned one-fifth second foot of water.    They answered further, by way of new matter, and alleged that they were the owners or lesseees of 14.03 second feet of water; that defendant Julian Smith was the owner of 4½ second feet of said water for annual use from October 15th to March 15th of each year, which was acquired by application to the state engineer on January 8, 1920, and was granted December 31, 1920; that said defendant Julian Smith, at the time of the issuance of the injunction, was beneficially using such 4½ second feet of water, and that more than four years prior to the filing of his said application plaintiffs had not beneficially used said water, and that the same had become public unappropriated waters of the state, and as such subject to his said appropriation for winter irrigation from October 15th to March 15th of each year.    The 9.33 second feet claimed by the defendant Dean Smith was claimed by virtue of a lease from the United States Reclamation Service, but, as the court

disallowed this claim, the allegations in regard thereto need not be noticed.

The defendants prayed that their said rights be established, and that plaintiffs be enjoined from interfering with their use of said waters, and for general relief.. Plaintiffs replied, putting in issue all of the facts pleaded in the answer and cross-complaint of the defendants.

On January 3, 1912, in a case entitled United States of America v. Edward F. Judkins et al., No. 112, in the District Court of the United States for the Fifth Judicial District of the then Territory of New Mexico, a decree was entered adjudicating water rights upon the Black river stream system in Eddy county, N. M. In that decree there was awarded to said Judkins the first water right for 3 second feet of water and the seventh water right for 7 second feet of water, making a total of 10 second feet, which waters were declared to be appropriated to the Blue Springs ranch. In said decree there was awarded to appellee Julian Smith the third water right to one-fifth second foot of water appurtenant to 20 acres of land in the decree described. On April 9, 1919, appellant D. R. Harkey filed with the state engineer an application (No. 1279) to appropriate 7 second feet of water for year round use out of the same source of supply above mentioned. A protest against the allowance of said application was filed with the state engineer by the successors in interest of the said Judkins. The matter was appealed from the decision of the state engineer to the state board of water commissioners, and from its decision to the district court in and for Eddy county. In that court decree was entered awarding to said Harkey 5 second feet of said water under his application No. 1279, upon the theory and finding that the said Judkins and his successors in interest, the said protestants, had forfeited by the same nonuser for more than 4 years prior to the filing of said application, leaving the said successors in interest of said

Judkins 5 second feet of water out of the 10 second feet originally awarded in the decree of 1912 to Judkins. In pursuance of said decree, the state engineer, on January 6, 1922, approved the Harkey application. On April 25, 1921, Harkey acquired by deed the Blue Springs ranch, together with the 10 second feet of water appurtenant thereto, awarded to Judkins in the decree of 1912. In the meantime appellee Julian Smith, on January 8, 1920, filed an application with the state engineer to appropriate 4½ second feet of water out of the same source of supply for the season from October 15th to March 15th, of each year, and based his application upon a claim that said "water applied for has been abandoned for a period of 4 years." This application was approved, and permit No. 1352 was issued to Smith on December 31, 1920, by the state engineer, with the following proviso and reservation:

"This approval is specifically subject to the proviso that it is not exercised to the detriment of any others having prior valid and existing rights to the use of the water of this stream system. This application, being of diversion of principally flood and torrential flow, is approved, allowing diversion to the full capacity of the works, providing the amount of water applied shall not be in excess of the equivalent of 3 acre feet per acre delivered on the land."

In the decree of 1912, it was declared:

That "said waters shall be available to each of the respective parties, as herein fixed, for beneficial use according to and within their respective appropriations, as herein defined, at such seasons and times as may be desired by said respective appropriators; and, in the event of nonuse of any appropriation, the water shall become available to any junior appropriator within the limit herein allowed, and, in the event of nonuse by any of the persons named herein, then to be considered public and unappropriated water and disposed of as hereinafter provided for."

Appellee Julian Smith was a party to that decree, but at that time he had a right to, and was adjudged to own one-fifth second foot of water as the third waterright on the stream. The proceeding in which that decree was rendered was in pursuance to the provisions of chapter 49, Laws 1907. The position of

appellee Smith in the court below and here is that a
forfeiture of this water right has taken place under
the statute by reason of the nonuse of the water during
the winter season for a period of 4 years, and that
Smith has acquired a primary, rather than a subsidiary,
right to the water during the winter season.

[1] 1. It may be stated generally that, under the
arid region doctrine, uncontrolled by statute, the ap-
propriation of water is accomplished by taking or di-
version of it from a natural stream or other sources
of water supply, with intent to apply it to some bene-
ficial use or purpose, and consummated within a rea-
sonable time by the actual application of the water to
the use designed or some other useful purpose.  2 Kin-
ney on Irr. and Water Rights (2 Ed.) § 707; 1 Weil
on Water Rights (3d Ed.) § 370; Beers v. Sharpe, 44
Or. 386, 75 P. 717; Gates v. Settlers' Co., 19 Okl. 83,
91 P. 856; Keeney v. Carillo, 2 N. M. 480; Millheiser
v. Long, 10 N. M. 99, 61 P. 111; Albuquerque Land &
Irr. Co. v. Gutierrez, 10 N. M. 177, 61 P. 357; Irrigation
Co. v. McMurry, 16 N. M. 172, 113 P. 823.

Under this doctrine it is quite as necessary to make
use of the water as it is to divert it, in fact, no appro-
priation can be effected without such use.  The intent,
diversion, and use must coincide.

As a result of this doctrine, there flows naturally
and necessarily the further doctrine of periodical or
seasonable appropriation.  If a farmer makes use of
the water for the irrigation of his crops only during
the growing season, say March 15th to October 15th
of each year, the same may be appropriated by a mill
owner for power purposes, by a placer miner for the
washing of his gravel, or by another farmer for irri-
gation purposes, or by another for storage for future
use, during the remainder of the year.  This is the
established doctrine everywhere, in the absence of
statutory regulations.  See 1 Weil, Water Rights (3d
Ed.) § 305, 2 Kinney on Irr. and Water Rights (2d Ed.)
§ 786, and 3 Farnham on Water, § 673, where all of

these cases are collected from most, if not all, of the Western States.

We have, however, a statute in this state regulating the acquisition, means, and manner of enjoyment of water rights which controls the whole matter, and which marks a wide departure from the doctrine above stated. It is chapter 49, Laws 1907. This is a comprehensive act consisting of 73 sections, which are carried forward as sections 5654 to 5729, Code 1915.

In Pueblo of Isleta v. Tondre, 18 N. M. 388, 137 P. 86, we had occasion to give this act somewhat thorough examination. In that case the question was whether an old community ditch, constructed prior to the passage of the act, was compelled by the terms of the act to apply to the state engineer for a permit to change the point of diversion of such ditch from a natural stream. We held that the act created no such requirement, not because it might not have done so, but because the terms employed did not so provide. In that case there is an expression on page 392 (137 P. 87) which is as follows:

"These two sections [referring to sections 19 and 20 of the act] also speak to the future, and have no application to water rights acquired prior to the passage of the act and the means of enjoying the same."

This statement, while correct as applied to the facts there present, is too broad for general application. It was, however, clarified in the opinion on rehearing at pages 415 to 417, where, considering the act more broadly, we expressly stated that water rights originated prior to the act became, after adjudication, subject to all of the regulatory provisions of the act. A careful re-examination of this legislation convinces us that there has been a departure from the old arid region doctrine of appropriation and seasonal or periodical appropriation, and that not the right to use water, either as to volume or periods of use, is regulated either by the permit of the state engineer, or the decrees of the courts. It is, of course, true that "beneficial use shall be the basis, the measure, and the limit of the right to

the use of water," as is provided by section 3 of article 16 of our Constitution. But this provision merely declares the basis of the right to the use of the water, and in no manner prohibits the regulation of the enjoyment· of that right. This legislation provides in section 23 that when water rights are adjudicated, the court shall declare as to each party the priority, amount, purpose, periods, and place of use, and, in case of irrigation, the lands to which the water shall be appurtenant. Section 21 requires all water right owners, whether their rights are prior to the passage of the act, or subsequent, to be made parties. In case of an application to the state engineer to appropriate water, the applicant is required by section 24 to state "the amount of water and period or periods of annual use" of the water applied for. Section ·34 provides for the issuance of the permit by the state engineer in accordance with the application.

It thus appears that all of these serious questions, leading so often to vexatious and disastrous litigation in regard to the appropriation of waters, both as to quantity and time, have been eliminated by this legislation. Now the right of the water user is measured by the permit of the state engineer or the decree of the court. It is the nature of the grant which prevents all future controversy as to the extent an character of the right.

In the present case, the decree of 1912, as before seen, awarded to plaintiffs' predecessors in interest the right to determine the seasons when they would use water. A fair interpretation of the decree leads to the conclusion that the court awarded to each water user on the stream system the primary right to the use of the amount of water adjudicated to him, whenever, during the year, he might desire to use the same. The provision for the right of the junior appropriator to come in, in event of the nonuse by a senior appropriator, grants a subsidiary right and authorizes the junior appropriator to take the water only when the senior

appropriator does not desire to use it, and in no man- ner purports to impair the primary right of the senior appropriator.   In the present case, however, appellee Smith is seeking to take from the senior appropriator a part of the right so established by the decree by claiming a primary right to the 4½ second feet of water during the winter months out of the 5 second feet be- longing to plaintiffs.   This cannot be done without vio- lating the express terms of the decree.   It is true that in the decree provision is made for application to the court for modification of the decree, but no such step has been taken, and the decree stands just as it was entered.

In this connection, it is to be noted that section 43 of the act prescribes the duty of water as one second foot of water for each 70 acres.   But there is no show- ing or finding by the court that the use in the winter time of this water by plaintiffs would result in ex- cessive use of the same.   In fact, if the irrigation of the land in the winter time effects the storage of the water as claimed by the appellees and found by the court, it would naturally follow that plaintiffs, if allowed to make such use of the water, would require less frequent irrigation in the growing season.   In this way the amount of the water consumed by plaintiffs would remain practically the same.

Counsel for appellees rely upon section 42 of the act as working a forfeiture of plaintiff's rights.   It is as follows:

"When the party entitled to the use of water fails to beneficially use all or any part of the water claimed by him, for which a right of use has vested, for the purpose for which it was appropriated or adjudicated, except the water for storage reservoirs, for a period of four years, such unused water shall revert to the public and shall be regarded as unappropriated public water."

The reading of this statute at once discloses its in- applicability to the facts in this case.   It appears in the proofs that plaintiffs and their predecessors in in- terest have beneficially used all of this water during,

each year since the initiation of their water right in the irrigation of their crops, and the court made no finding to the contrary. In fact all of the parties seemed to have assumed this to be the case. This statute clearly refers to quantity of water and not to periods of use. It contemplates that the prior appropriator may hold his right to all of the water for any period of time less than 4 years, and may use said water at any time he requires it during the year, providing he uses only the quantity appropriated, and providing he in good faith makes beneficial use of the same in accordance with his necessities. If he fails to use the quantity included in his appropriation, after 4 years it reverts to the common fund of public water of the state, and is subject to appropriation. But we have no such facts here.

In this connection it is to be observed that the doctrine of seasonal appropriation is not well adapted to general agriculture, such as that in which the parties are here engaged. The right, to be effective, must authorize the rotation of crops and variation of times or methods of the irrigation thereof, from year to year, as experience may dictate, or conditions of the lands, or markets for agricultural products, might seem to render advisable. There could be, in justice, no restrictions upon the right of plaintiffs requiring them to adhere to the raising of the same crops and to cultivate and irrigate them in the same way and at the same time of the year as they were at the time of the inception of their right to the water. In other words, the right should be a right to use the waters generally for agricultural purposes at such times, for such crops, and in such manner as experience may dictate as calculated to bring about the best results. This must necessarily be so, because agriculture is not an exact science and must be varied from year to year according to the results obtained and the knowledge acquired from experience. In this particular, these appropriations for agriculture differ from those where the use to be made of the water is certain and is to

remain permanent in character, as, for instance, water for placer mining or for storage, or to run a mill. In these cases the use to which the water is to be put remains constant and unvarying. But not so with these appropriations for agriculture. The farmer must have the water whenever, in pursuance of any reasonable plan, he requires it for his crops, or the preparation of his lands for planting; otherwise his right will be too precarious to be of any practical value.

But under the old arid region doctrine it was necessary to hold that beneficial use, both as to volume and periods of time, was the evidence and measure of the right, and hence an irrigator might by conduct limit his right to certain periods of the year. Now, however, under our statute, the grant under the permit of the state engineer or the decree of the court marks the limit of the right.

In connection with this case, it is always to be noted that the same is not a case where it is sought by defendants to compel rotation in the use of the waters, or to apportion the same between the parties. The defendants have proceeded upon the theory that they have acquired a primary right to the use of the waters during a certain season of the year. In this, as we have seen, they are mistaken. Their right to the water is at all times subservient to the primary right of the plaintiffs, and can be exercised only after plaintiffs' needs have been supplied. Whether this state of facts renders the rights of defendants so uncertain and precarious as to be of no practical value, and whether they could apply to the courts to compel an apportionment or rotation of the use of the water, so as to render both rights effective, we do not decide, because the same is not involved in the issues. All that can now be said is that the defendants have no right to the water until after the needs of the plaintiffs have been satisfied. But, whether a rule of rotation or apportionment could be worked out with justice to the parties in a case of this kind, where the needs of the prior appropriator

must vary with the years, and kinds and classes of crops are not fixed, would seem to be a question of great difficulty and doubt. If not, defendants must be content with their subservient right to the water when plaintiffs can make no beneficial use of the same. This case differs from those arising on community ditches, where all of the rights are usually of the same dignity, and rotation is frequently awarded as a means of dividing the water on equitable basis.

Counsel for appellees call attention in their brief to the fact that Harkey's predecessors in interest had, prior to Harkey's deed, a contract with defendant, Dean Smith, for the right of way for the ditch over the Blue Springs ranch, in which reference is specifically made to the Julian Smith application to the state engineer. The estoppel relied upon, however, is not available for several reasons. In the first place, it is not pleaded, and the court made no finding upon it. Again, the contract for the easement was recorded after the deed to Harkey had been executed by Parkhurst and wife, the owners and successors to Judkins. It is to be further noticed that in the deed to Harkey no mention is made of the Julian Smith appropriation, and at the time Dean Smith was claiming water under the lease from the Reclamation Service. So the estoppel fails for all of these reasons.

The facts here present a hard case. Appellee Julian Smith, it is alleged, has expended over $4,000 in preparing his land for cultivation, and has applied the water to the irrigation of said lands with entire success as a farming operation. This must now cease, unless by convention, or a decree of the court, an apportionment of these waters can be obtained. This we do not decide because not within the issues. The fact remains, however, that no "dog in the manger" policy can be allowed in this state, unless these waters can be and are beneficially used by plaintiffs, the defendants or others may use the same.

[2] A minor consideration is presented by appel-

lants to the effect that the court erred in allowing the right to defendants to run 4.7 second feet of water over the lands of the plaintiffs. The plaintiff D. R. Harkey acquired the land over which the defendants have been running the water in question to their lands by deed dated April 25, 1921. In that deed, in the covenant against incumbrances, there is contained the following exception:

"Except also the easement in favor of Dean Smith, permitting him to conduct water over and across said lands."

The easement of Dean Smith arose out of a contract between him and Harkey's predecessors in title, dated February 18, 1920, granting Dean Smith the right to convey over said lands the very water involved in this case, referring to Julian Smith's application No. 1352 to identify the same. It appears that the defendants are father and son, and conduct their farming operations together, Dean Smith, the son, managing the business, although they own their lands in severalty. So it appears that Dean Smith is the owner of the easement, and Julian Smith is the owner of the right to use the water, such as it is. But the easement to Dean Smith is to conduct Julian Smith's water over the land, and we see no objection, under the circumstances, to the decree in this particular. The argument by counsel for plaintiffs is that because Dean Smith does not own the water right, he cannot run the water of Julian Smith over the land under the easement. This contention is not sound, because this easement is for the purpose of running the Julian Smith water over the land.

In regard to the one-fifth second foot of water owned by Julian Smith, the situation is different. So far as the record dicloses, these defendants have never acquired a right of way to convey this water over plaintiffs' land at the point where it is being conveyed. However, the plaintiffs failed to except to the decree in this regard, and the action of the court cannot be reviewed.

It follows from all the foregoing that the decree is erroneous and should be reversed, and the cause remanded with directions to enter a decree in favor of plaintiffs establishing their prior right to 18 1-3 second feet of water, the one-fifth second foot owned by Julian Smith by a prior appropriation to that of plaintiffs not being involved, and enjoining defendants from using any of said waters at any season of the year so long as plaintiffs desire and are applying the same to their beneficial use, and enjoining defendants from conducting the water over plaintiffs lands in excess of 4.7 second feet, and it is so ordered.

BICKLEY and WATSON, JJ., concur.