439 P.2d 714

**W. S. RANCH COMPANY, a corporation, Protestant-Appellant,**

**v.**

**KAISER STEEL CORPORATION, a corporation, Eual A. Messick, Daisy C. Messick, and S. E. Reynolds, State Engineer of New Mexico, Applicants-Appellees.**

**No. 8368.**

Supreme Court of New Mexico.

March 18, 1968.

Rehearing Denied April 26, 1968.

Robertson & Robertson, Raton, Montgomery, Federici & Andrews, Richard S. Morris, Santa Fe, for appellant.

John F. Russell, Roswell, Wright & Kastler, Raton, for appellee, Kaiser Steel Corp.

Boston E. Witt, Atty. Gen., F. Harlan Flint, Peter B. Shoenfeld, Sp. Asst. Attys. Gen., Santa Fe, for S. E. Reynolds, State Engineer.

## OPINION

CARMODY, Justice.

The district court affirmed the state engineer's approval of Kaiser Steel's application to change the point of diversion of certain adjudicated water rights, and W. S. Ranch appeals.

Although there are other connected topics, the basic issue has to do with the meaning and effect to be given to the final decree which adjudicated the water rights of the Vermejo Stream System in 1941. Under the decree, the maximum duty of water of the 163.4 acres with which we are concerned was adjudged "to be two acre-feet of water per annum per acre of land irrigated delivered at the land." These particular rights were junior to other rights of W. S. Ranch, and the point of diversion was below that of W. S. Ranch. Kaiser purchased the rights to 115 of the 163.4 acres, and applied to the state engineer for authority to change the point of diversion to a location above that of W. S. Ranch. The application sought to divert 230 acre-feet annually at a point some fifteen miles higher up on the stream system, and, of course, to dry up 115 acres, or 230 acre-feet of water, at the old location. The proposed transfer was also from agricultural to industrial use, for mining and coal-washing facilities.

At the hearing before the state engineer, considerable testimony was presented as to the amount of water available, the manner in which Kaiser would utilize the water, and the amount of return flow to the stream system; but Kaiser offered no testimony as to the extent to which water had been applied to beneficial use on the 163.4 acres involved. What little testimony there is as to application or non-application of water to beneficial use was brought out on cross-examination of one of Kaiser's witnesses. It is W. S. Ranch's position that even though the adjudication decree provided that the maximum duty was two acre-feet, that this does not justify the transfer of this amount of water without an affirmative showing that such maximum has been applied to beneficial use and that the transfer can be made without detriment to existing rights.

The state engineer found that the change of place of use, and the change in purpose and point of diversion, could be made "without detriment to existing rights." Such a finding is required by law (§§ 75–5–22 and 75–5–23, N.M.S.A.1953), but the question here is: Does the adjudication decree take the place of proof of the amount of water actually applied to beneficial use by a junior appropriator? It is our considered judgment that the adjudication decree is proof of the nature and extent of the rights sought to be transferred. The adjudication court determined that the water had been applied to beneficial use, thus satisfying the constitutional and statutory requirements. The state engineer could not do else than accept the court's decree. Were it otherwise, the engineer could, in

effect, overrule, amend or revise an adjudication decree. This, of course, would offend not only the constitution but our statutes and decisional law.

The purpose of adjudications under the New Mexico statutory procedure is well stated in Harkey v. Smith, 1926, 31 N.M. 521, 247 P. 550, wherein he said:

" * * * A careful re-examination of this legislation convinces us that there has been a departure from the old arid region doctrine of appropriation and seasonal or periodical appropriation, and that not [sic] the right to use water, either as to *volume or periods of use,* is regulated either by the permit of the state engineer, or the decrees of the courts. It is, of course, true that 'beneficial use shall be the basis, the measure, and the limit of the right to the use of water,' as is provided by section 3 of article 16 of our Constitution. But this provision merely declares the basis of the right to the use of the water, and in no manner prohibits the regulation of the enjoyment of that right. This legislation provides in section 23 that when water rights are adjudicated, the court shall declare as to each party the *priority, amount, purpose, periods, and place of use,* and, in case of irrigation, the lands to which the water shall be appurtenant. * * *

"It thus appears that all of these serious questions, leading so often to vexatious and disastrous litigation in regard to the appropriation of waters, both as to quantity and time, have been eliminated by this legislation. *Now the right of the water user is measured by* the permit of the state engineer or *the decree of the court.* It is the nature of the grant which prevents all future controversy as to the extent an [sic] character of the right.

\* \* \* \* \* \* \*

"But under the old arid region doctrine it was necessary to hold that beneficial use, both as to volume and periods of time, was the evidence and measure of the right, and hence an irrigator might by conduct limit his right to certain periods of the year. Now, however, under our statute, the grant under the permit of the state engineer or the decree of the court marks the limit of the right." (Emphasis added.)

And in El Paso & R. I. Ry. Co. v. District Court of Fifth Judicial Dist., 1931, 36 N.M. 94, 8 P.2d 1064, it was pointed out why and in what manner New Mexico adjudications differ from those in Colorado. There we said:

"The allegations that petitioners have abandoned their rights or a portion of them, or that some of the use to which they have subjected the waters has been unlawful or wasteful, do not bring this case within those cited. Such issues are proper to be raised in the adjudication suit, where petitioners have submitted the validity and extent of their right, and where all parties contesting or questioning it may be heard and may have their own rights established.

"It is true that Colorado adjudications are not so sweeping as ours, and that much more is left to the ordinary jurisdiction of equity. The adjudication determines priorities of ditches only. It is confined to the limits of a water district which does not necessarily embrace a whole stream system. Priorities among consumers from the same ditch, and among appropriators in different districts from the same stream system, must be settled elsewhere. * * *

"Colorado was the leader in statutory state control and adjudication, with twenty-five years of experience before we undertook it. Undoubtedly its statutes and precedents furnished a background for our own legislation. Undoubtedly our adjudication was intended to be more comprehensive. Here stream systems as a whole are to be surveyed. Section 151–118, supra. All rights in the stream system are to be adjudicated. Sections 151–120, 151–122, supra. All claimants are to be parties. Section 151–122, supra. The owners of water rights, not the owners of ditches, are the parties. Snow

v. Abalos, supra. In the light of Colorado's experience, we undertook a more thorough job. With North and South Dakota and Oklahoma, we are said to have based our statutes on the draft of Mr. Bean of the Reclamation Service. 2 Weil on Water Rights in the Western States (3d Ed.) p. 1480. Our scheme seems more logical. Whether it is so ambitious as to be impracticable remains to be determined."

■ It should therefore be plain that the Colorado cases so strongly relied upon by W. S. Ranch, particularly Farmers Highline Canal & R. Co. v. City of Golden, 1954, 129 Colo. 575, 272 P.2d 629, do not involve the same issue that is now before us. There being an adjudication decree, there was no necessity for Kaiser to offer proof of the nature and extent of the rights sought to be transferred other than as specified by the adjudication decree. Cf., Public Service Company v. Reynolds, 1960, 68 N.M. 54, 358 P.2d 621.

We see nothing in the cases of Durand v. Reynolds, 1965, 75 N.M. 497, 406 P.2d 817; Public Service Company v. Reynolds, supra; Spencer v. Bliss, 1955, 60 N.M. 16, 287 P.2d 221; or Pecos Valley Artesian Conservancy Dist. v. Peters, 1948, 52 N.M. 148, 193 P.2d· 418, which is contrary to what we have heretofore said. Thus there was no error in accepting the adjudication decree as proof of the water rights sought to be transferred.

■ W. S. Ranch argues that the finding, that the transfer would not be detrimental to existing rights, is unsupported by and contrary to the undisputed evidence. There was testimony that, as to at least 40 acres, there had been no water applied to the land for one, or perhaps two, years prior to the hearing before the state engineer. However, other than this testimony, there was no showing of any abandonment or forfeiture, nor was any particular reason given why the "existing right" should have been considered to be impaired. Cf., Cross v. Erickson, 1963, 72 N.M. 73, 380 P.2d 520. The year or

years in question were particularly dry ones, and if there is no water available, the owner of the water right is not to be penalized. Section 75-5-26, N.M.S.A. 1953; and New Mexico Products Co. v. New Mexico Power Co., 1937, 42 N.M. 311, 77 P.2d 634. Although, of course, from this and other evidence a fact-finder might have determined that the change would be detrimental to existing rights, there is substantial evidence to the contrary. The engineer's ultimate finding of no detriment is based, in part at least, on the testimony of two former New Mexico state engineers. Although not intending to imply that the testimony of these individuals is entitled to any greater credence or weight than the expert who testified to the contrary, nevertheless the testimony is certainly not such as should be ignored. This testimony and the other evidence in the record amply sustains the engineer's finding. Clodfelter v. Reynolds, 1961, 68 N.M. 61, 358 P.2d 626:

"* * * However, the State Engineer is a highly qualified, able and competent engineer, acquainted with water problems. He heard the evidence and found that the diversion proposed in appellee's application will not impair the rights of any of appellants, or any other existing rights to the use of public waters. The district court also found that no prior existing rights will be impaired by the pumping of the proposed well. This was a controverted issue in the case. * *"

■■ Allied to the above contention is the claim that the order permits Kaiser to make an extended use of the water right and amounts to a new appropriation. This argument is based upon the proposition that the Vermejo River is a "losing" stream and that there is more water available at the new place of diversion than at the old; that because of this, Kaiser is really obtaining a new appropriation for the additional water, but with the original priority date. This argument is at first blush plausible, because it was agreed by the expert witnesses that during most

years there were times when there was insufficient water available to satisfy upstream rights which had a priority higher than those of the 163.4 acres. Nevertheless, the fallacy of the argument is apparent—Kaiser is only entitled to the amount of water that would be available at the old point of diversion as provided in the adjudication decree—it can take no more. Such is the position taken both by Kaiser and the state engineer, and in view of this concession by them, we see no reason to disagree. But as long as a decree remains in effect, Kaiser is entitled to take the amount of water adjudicated to this right, if, but only if, it can do so without detriment to the rights of other water users on the stream. In this connection, we recognize that changing the place of diversion cannot enlarge or expand the water right at the expense of other appropriators or the state. Cf., Millheiser v. Long, 1900, 10 N.M. 99, 61 P. 111; and Hagerman Irrigation Co. v. McMurry, 1911, 16 N.M. 172, 113 P. 823. On the other hand, it is not analogous to Kelley v. Carlsbad Irrigation District, 1966, 76 N.M. 466, 415 P.2d 849, which was an application to change a point of diversion from surface to underground waters, where the surface flow had lost its identity as surface water.

We acknowledge that users of irrigation waters have a preference for a diversion point as high up on the stream system as possible, and we are not unmindful that, in irrigation practice, a higher diversion point is frequently preferred to a higher downstream priority. There would seem to be little question but that, pragmatically, these considerations may very well have prompted the protest to the instant proposed change in point of diversion.

To this end, W. S. Ranch urges that although the state engineer imposed certain conditions in conjunction with the granting of the change of point of diversion, the imposition of these conditions does not avail or prevent the detrimental effects of the transfer. Briefly, the conditions imposed limit the total annual amount of water which can be diverted, require the measurement and recording of water diversions and the return flow, protect certain junior appropriators, and, finally, state that the diversion shall not be exercised to the detriment of others. The whole argument on this point assumes that the transfer is detrimental to existing rights; but, conversely, if there is no detriment, we fail to understand how the conditions imposed do anything except give W. S. Ranch added assurance that its water rights will be protected. Theoretically, at least, the state engineer, having determined that the transfer could be made without detriment to existing rights, could have stopped there and imposed no conditions. However, as a part of his duties in protecting and supervising the public waters of New Mexico, he imposed the conditions mentioned. Cf., City of Albuquerque v. Reynolds, 1962, 71 N.M. 428, 379 P.2d 73. Whether or not any conditions were imposed has no effect whatsoever on the right to damages which may or may not accrue to any other appropriator. Compare, Tevis v. McCrary, 1963, 72 N.M. 134, 381 P.2d 208. The conditions do, however, have the wholesome advantage of providing for a more adequate record than formerly existed.

We have made no mention of the action of the district court in approving the findings of the state engineer. The decision of that court was on the basis of the record before the engineer, and was fully in accordance with our decisions relating to review of the engineer's decisions. See, e. g., Durand v. Reynolds, supra, and discussion therein. Therefore, there is no reason to lengthen this opinion by reviewing the actions of the trial court.

In any event, the points on appeal are without merit and the judgment of the district court affirming the state engineer's action in granting the change of point of diversion to Kaiser Steel is affirmed. It is so ordered.

NOBLE and COMPTON, JJ., concur.