838 P.2d 983

William **BARRERAS,** Edward **Buxton** and Mark **Jaramillo,** Plaintiffs–Appellants,

v.

**NEW MEXICO CORRECTIONS DEPARTMENT,** Defendant–Appellee.

No. 19907.

Supreme Court of New Mexico.

Sept. 4, 1992.

E. Justin Pennington, Albuquerque, for plaintiffs-appellants.

Tom Udall, Atty. Gen., Maryanne Reilly, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

FRANCHINI, Justice.

At the time of the incidents giving rise to this action plaintiffs Barreras, Buxton, and Jaramillo were employed on a probationary basis as correctional officers at the Central New Mexico Correctional Facility (CNMCF). Plaintiffs were dismissed from their employment after testing positive for use of THC. This cause of action was brought against defendants The New Mexico Corrections Department (the Department), Michael Francke and O. Lane McCotter, then employed as Secretaries of Corrections of the State of New Mexico, and Derald Kerby, then warden at CNMCF.

## I.

Plaintiffs sought relief in district court alleging wrongful termination by defendants. Plaintiffs asserted claims based on breach of contract and deprivation of constitutional rights. In December 1987, defendants moved to dismiss plaintiffs' complaint. Subsequently, in June 1990, the trial court entered its order dismissing plaintiffs' claims directly alleging breach of contract, but denying defendants' motion in all other respects.

In February 1991, defendants moved for summary judgment. The trial court heard argument in March 1991, and granted defendants' motion for summary judgment, dismissing plaintiffs' complaint in its entirety. Plaintiffs appealed the trial court's grant of summary judgment to the court of appeals. On its own motion, in June 1991, the court of appeals transferred the case to this Court on the basis that one or more counts of the complaint sounded in contract.

Plaintiffs now raise three issues for our review: (1) whether the trial court erred in granting summary judgment on the court's finding that plaintiffs consented to urinalysis, thereby waiving their constitutional right to be secure from unreasonable search and seizure; (2) whether the trial court erred in finding that plaintiffs waived their right to due process of law by refusing to respond to allegations of drug use during questioning by the Department's fact-finding committee; and (3) whether the trial court erred in dismissing plaintiffs' complaint without adjudication of their rights under the State Personnel Act. We discuss and reject petitioners' contentions and affirm the decision of the trial court in its entirety.

As a preliminary matter, we note that findings of fact and conclusions of law by the trial court are not generally required on grants of summary judgment, and no findings of fact or conclusions of law were made in this case. SCRA 1986, 1–052(B)(1) (Repl.Pamp.1992). Plaintiffs frame the issues presented on appeal to this Court as if attacking specific findings made by the trial court, relying on informal statements made from the bench. Such statements cannot be relied upon as a formal decision from which error may be predicated. *Ellis v. Parmer,* 76 N.M. 626, 629, 417 P.2d 436, 439 (1966).

For this reason, we do not limit our discussion of plaintiffs' Fourth Amendment claim to a determination of whether the plaintiffs consented to urinalysis, thereby waiving their Fourth Amendment right. Nor do we limit our consideration of plaintiffs' due process claim to whether they waived their rights to due process by refusing to respond to questions from the fact-finding committee. We instead look to all of the facts presented in the case and focus on a determination of whether there are genuine issues of material fact relative to plaintiffs' claims and whether defendants were entitled to summary judgment as a matter of law. *Gardner–Zemke Co. v. State,* 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990).

## II.

Warden Kerby had received information that correctional officers were using marijuana and other drugs or alcohol. He also received information that these substances were possibly being brought into CNMCF and sold or given to inmates by some unnamed officers. In response to this information, on August 30, 1985, Warden Kerby implemented a search procedure whereby dog handlers and their trained drug detection dogs were employed for the purposes of detecting possession or recent use of drugs or alcohol by correctional facility employees.

Based upon the actions of the dogs and the report of the dog handler, each plaintiff was asked to give a urine sample for drug testing. The initial results for each plaintiff was positive for marijuana metabolites. These results were later confirmed by an independent laboratory.

Warden Kerby began a formal investigation into the matter and delivered letters to plaintiffs informing them that an investigation was pending concerning possible drug use. He also informed them that a fact-

finding committee would be formed with regard to the allegations. In September 1985, plaintiffs met individually with the fact-finding committee appointed by the warden. Plaintiffs were represented by counsel and upon the advice of counsel invoked their Fifth Amendment right and refused to answer any questions about drugs, drug use, and possession of drugs or drug paraphernalia. These fact-finding meetings were recorded, and a transcript was made to reflect the discussions therein.

The record before us reveals that plaintiffs, upon employment, signed an agreement which set forth their temporary status and explained that they could be dismissed at any time. Within approximately four months of their initial employment, each plaintiff was reclassified as a probationary employee. It is also undisputed that on August 30, 1985, CNMCF had a policy in effect which provided: "Reporting for work or while at work, manifesting any evidence of or being under the influence of, or having in possession, intoxicating beverages or drugs, may be grounds for dismissal. An appropriate test may be administered to determine such." Plaintiffs knew of this policy upon commencement of their employment with the facility.

In addition, each day on their way to work plaintiffs passed a sign located at the entrance to CNMCF which stated that all persons and vehicles entering were subject to search. Plaintiffs also submitted to metal detector searches each day upon entering the facility.

None of the plaintiffs presented evidence indicating that they objected or refused to comply with the above policies and procedures. In addition, none of the plaintiffs presented evidence which demonstrated any objection to the canine search, or any refusal to provide a urine sample for drug testing.

### III.

The Fourth Amendment to the United States Constitution provides that: "[t]he

right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.[1] In clarification of this right, the Supreme Court of the United States has recognized a reasonable expectation of privacy belonging to each individual. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Searches made by government officials without a warrant based on probable cause have been determined *"per se* unreasonable" based on this Fourth Amendment right. *Id.* at 357, 88 S.Ct. at 514. However, exceptions have been made, particularly "where a legitimate governmental purpose makes the intrusion into privacy reasonable." *Security & Law Enforcement Employees v. Carey*, 737 F.2d 187, 203 (2d Cir.1984). In *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the Supreme Court recognized that "[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Id.* at 624, 109 S.Ct. at 1417.

When discretion is employed by governmental officials, they must be regulated by a "standard of reasonableness" that is consistent with the privacy goals manifested in the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

■ In this case, the reasonableness standard requires a balancing of the state's

---

1. The Constitution of New Mexico provides in pertinent part that: "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." N.M. Const. art. II, § 10.

need for a drug-free correctional facility against the invasion that canine searches and urinalysis testing impose upon employees of the facility. Correctional officers, because of their involvement with the security efforts of the facility, have a diminished subjective expectation of privacy while they are within the prison grounds. *McDonell v. Hunter*, 809 F.2d 1302, 1306 (8th Cir.1987). In *Security and Law Enforcement Employees,* the Second Circuit recognized that society would accept this diminished expectation of privacy because of "the difficult burdens of maintaining safety, order and security that society imposes on those who staff our prisons." *Id.* at 202.

In contrast to the employees' diminished expectation of privacy, the governmental interest being furthered in this case is compelling. The Supreme Court has recognized that "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell,* 441 U.S. at 559, 99 S.Ct. at 1884. The Eighth Circuit noted that, "[o]fficials have a legitimate interest in assuring that the activities of those employees who come into daily contact with inmates are not inhibited by drugs or alcohol and are fully capable of performing their duties." *McDonell,* 809 F.2d at 1308. The constitutionality of uniform and systematic random urinalysis testing of all state employees who have regular contact with inmates of medium or maximum security prisons was upheld in that case. *Id.* The *McDonell* court also noted that this testing was the least intrusive manner of determining whether corrections employees "are using or abusing drugs which would affect their ability to safely perform their work within the prison." *Id.*

In the present case, Warden Kerby acted reasonably in response to the information he received concerning a possible drug problem within the correctional facility. We view the canine search as a minimal intrusion into the diminished privacy interests of a correctional officer. Likewise,

the urinalysis testing under these circumstances was reasonable for the protection of security in the institution. In light of the foregoing statement of facts and discussion, summary judgement was properly granted for defendants.

## IV.

We now turn to plaintiffs' due process claim. In order to assert a procedural due process claim under the Fourteenth Amendment, a plaintiff must establish deprivation of a legitimate liberty or property interest and that he was not afforded adequate procedural protections. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Tenured public employees are entitled to oral or written notice of the charges against them, an explanation of the employer's evidence, and an opportunity to present their side of the story. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).

It is undisputed that the plaintiffs were probationary employees of the State of New Mexico, and as such, it is questionable whether they had a legitimate claim of entitlement to a property interest in continued employment. *Roth,* 408 U.S. at 577–78, 92 S.Ct. at 2709; *see also Richardson v. City of Albuquerque,* 857 F.2d 727, 732 (10th Cir.1988) (concluding a probationary employee had a lesser expectation of continued employment than that offered to permanent employees). It is equally questionable whether plaintiffs' liberty interests were affected. However, we need not reach these issues. Under the facts of this case, even if plaintiffs had legitimate liberty or property interests, they received adequate procedural protection.

On August 30, 1985, each plaintiff received notice, by letter from Warden Kerby, that they were being placed on leave with pay and investigated for possible use and/or possession of marijuana. On September 5, 1985, each plaintiff was provided with the opportunity to present his side of the story before a fact-finding committee appointed by the warden. Plaintiffs were represented by counsel at the fact-finding

hearing, and, on the advice of counsel, chose to invoke the Fifth Amendment, refusing to answer questions about use or possession of drugs or drug paraphernalia, or about the results of the previously administered drug tests.

On September 11, 1985, each plaintiff was informed by letter that his employment was terminated due to the fact that he had tested positive for use of THC. In addition, plaintiffs were informed that they had ten days in which to appeal their dismissals. On such facts, we conclude that plaintiffs were afforded sufficient procedural consideration, and that summary judgment on the due process issue was proper.

## V.

■ The plaintiffs further claim that the trial court erred in failing to adjudicate their rights under the State Personnel Act, NMSA Section 10–9–1 to –25 (Repl.Pamp.1992) (the Act). The department responds, and we agree, that plaintiffs' complaint never alleged violations of the Act as an independent issue. Plaintiffs' complaint references the Act in factual allegations offered to establish the contractual and constitutional issues, but does not identify violation of the Act as a separate issue before the trial court. We will not consider a matter not properly brought before the trial court for the first time on appeal. *Chrysler Credit Corp. v. Beagles Chrysler–Plymouth,* 83 N.M. 272, 273, 491 P.2d 160, 161 (1971).

For all of the above reasons, we affirm the decision of the trial court in its entirety.

IT IS SO ORDERED.

BACA and FROST, JJ., concur.