The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>March 5, 2024</u>

**No. A-1-CA-40325**

**CORLINDA H. LUJAN, IDA M. LUJAN, and PABLO LUJAN,**

Plaintiffs-Appellants,

v.

**ACEQUIA MESA DEL MEDIO, a New Mexico Community Ditch Association; TEODORO (TED) CHACON, Individually and as Mayordomo of Acequia Mesa del Medio; JOSE LEANDRO MARTINEZ; MAGDALENA L. MARTINEZ; RICHARD (RICKY) MARTINEZ, Individually and as President of Acequia Mesa del Medio; STEVEN D. SALAZAR, Individually and as Treasurer of Acequia Mesa del Medio; LUIS TOBIAS (TOBY) VELASQUEZ, Individually and as Secretary of Acequia Mesa del Medio,**

Defendants-Appellees,

and

**ELISE P. BENSEN; HELEN M. CHACON; HENRY CHACON; CONNIE GARCIA; ESTELLA GARCIA; RICHARD GARCIA; MARY ANN J. GONZALES-LUJAN, Individually and as Personal Representative of the Estate of Angie M. Romero, Deceased; LEVI HERRERA; TOMASITA (TOMMIE) HERRERA; ROSE LOVATO; PATSY LUCERO-MAESTAS; IDA MADRID; RON R. MAESTAS; BELARMINO MARTINEZ; GLORIA MARTINEZ; CONSUELO V. MEDINA; FRANK MEDINA; ANNETTE MORFIN; BENITO MORFIN; JOAQUIN MORFIN; LEONARD MORFIN; CLEOTILDE SALAZAR; LEO SALAZAR; MARIA ELENA SALAZAR; SANTANA SALAZAR; ELAINE VALDEZ; LARRY MANUEL VALDEZ; MARK W. VALDEZ; SANDRA VALDEZ; VALDEZ, INC., a New Mexico corporation; GABRIEL A. VELASQUEZ; RUDY BEN VELASQUEZ, JR.; TOMAS A. VELASQUEZ, JR.; WAYNE D. VELASQUEZ; and SAMUEL H. YOUNG,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Francis J. Mathew, District Court Judge**

Montgomery & Andrews, P.A.
Randy S. Bartell
Santa Fe, NM

Ida M. Luján
Santa Fe, NM

for Appellants

Humphrey & Odé, P.C.
Mary E. Humphrey
Connie Odé
El Prado, NM

for Appellees Acequia Mesa del Medio and Teodoro (Ted) Chacon, Richard (Ricky) Martinez, Steven D. Salazar, and Luis Tobias (Toby) Velasquez

Peter B. Shoenfeld, P.A.
Peter B. Shoenfeld
Santa Fe, NM

for Appellees Jose Leandro Martinez and Magdalena Martinez

New Mexico Legal Aid
David Benavides
Matthew Baca
Santa Fe, NM

for Amicus Curiae New Mexico Acequia Association

**OPINION**

**IVES, Judge.**

{1}    This appeal pertains to a dispute about the rights that several landowners have to irrigate their properties with water from the Acequia Mesa del Medio (the Acequia) and the role of the governing body of the Acequia, Defendant-Appellee Acequia Mesa del Medio (AMM), in the distribution of water to those landowners. The district court ruled against Plaintiffs-Appellants Corlinda Lujan, Ida Lujan, and Pablo Lujan and in favor of AMM and Defendants-Appellees Jose Leandro Martinez and Magdalena Martinez. The court concluded that AMM had the authority to distribute water to its members based on custom; the Lujans owned only a portion of a decreed water right rather than the entire right; the Lujans failed to show that they had a constitutionally protected property interest that supported their due process claim; and the Lujans must pay AMM's expert costs and attorney's fees.

{2}    The central issues in this appeal involve the relationship between two distinct rights associated with acéquias: an irrigation water right, which is the right to use water to irrigate, *see Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 41, 289 P.3d 1232, and a ditch right, which includes, as primarily relevant here, the right to take water from the ditch for a certain period of time. *See Bounds v. Hamlett*, 2011-NMCA-078, ¶ 4, 150 N.M. 389, 258 P.3d 1181 (stating that "the amount of time during a water cycle that an individual water user

may take water from the ditch" is a ditch right). "New Mexico cases have long recognized that ditch rights and water rights are distinct, are derived from different sources, and are governed by different rules of law." *Olson v. H & B Properties, Inc.*, 1994-NMSC-100, ¶ 10, 118 N.M. 495, 882 P.2d 536. We conclude that the district court correctly distinguished between the two rights and correctly rejected the Lujans' arguments about the relationship between the two rights under the facts of this case. We also conclude that the court did not err as to the Lujans' due process claim, expert costs, or attorney's fees. We therefore affirm.

**BACKGROUND**

{3}     This case is complex both legally and historically. Legally, it is situated within a niche—acéquia and community ditch governance—of a specialized area—water law. Historically, it involves families and neighbors whose dynamics began roiling several decades ago. We summarize the relevant history here, discussing in turn land ownership and water right ownership, ditch right ownership, and the current proceeding.[1] When necessary for context, we include brief summaries of the relevant law.

---

[1]The procedural history is based on the findings made by the district court and facts that are undisputed by the parties. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 (stating that unchallenged findings are binding on appeal). To the extent that the Lujans seek to challenge specific findings in this appeal, they waived these arguments, *see* Rule 12-318(A)(4) NMRA, by "fail[ing] to properly set forth all the evidence bearing upon the findings." *Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 18, 115 N.M. 181, 848 P.2d 1108.

## I.    Land and Water Right Ownership

{4}    It is important to trace land ownership because "[i]rrigation water rights are appurtenant to the land, meaning that any conveyance of the land will carry the water right with it unless the water right is expressly reserved by the grantor." *Walker v. United States*, 2007-NMSC-038, ¶ 23, 142 N.M. 45, 162 P.3d 882. Corlinda, the Martinezes, and the heirs of Froilan Chacon[2] all own some land irrigated with water from the Acequia that was originally part of Jose Onesimo Lujan, Senior's (Jose Sr.'s) 160-acre homestead. Jose Onesimo Lujan, Junior (Jose Jr.), received 114 acres of the homestead in several conveyances in the 1940s and 50s, and after Jose Jr. passed away in 1961, his surviving spouse, Corlinda, inherited those acres. The Martinezes' predecessor-in-interest, Fabian Lujan, received a separate 34 acres in the 1950s and subsequently conveyed 28 of those acres to the Martinezes in 1964. Froilan Chacon received 6 acres of the homestead in the 1940s.

{5}    Of the 142 acres owned by the Martinezes and Corlinda, only 42.2 have an appurtenant water right. The water rights on the Acequia vested after a district court completed a special proceeding termed an "adjudication," in which it determined all water rights on the Rio Puerco de Chama, the body of water that supplies the Acequia. *See* NMSA 1978, § 72-4-17 (1965) (outlining the adjudication process). In

---

[2]Froilan's name is spelled in various ways throughout the record; for clarity and ease we use Froilan.

the adjudication, which is known as the *Chacon* Adjudication, a district court issued a decree—the *Chacon* Decree—in 1962.[3] *Chacon v. Chacon*, Rio Arriba County Cause No. 4922. The Lujans and the Martinezes were not parties to the *Chacon* Adjudication, yet the *Chacon* court decreed an irrigation water right to "Jose Onisimo Lujan and wife Corlinda Lujan."[4] The *Chacon* Decree court identified the specific tracts of land that had appurtenant rights to take water from the Acequia for irrigation. An owner or prior owner's name was used as a shorthand to label the tracts of land identified on a map showing the acreage with appurtenant water rights. The 42.2 acres of land at issue in this case to which the water rights were appurtenant were identified by a legal description and correlating map.[5]

{6}     The *Chacon* Decree further identified all water rights in the Decree as "appurtenant to the lands . . . as set forth in . . . th[e] Decree," and the Decree states and such appurtenant water rights may be severed hereafter from said lands, only in accord with" New Mexico law. The *Chacon* Decree did not adjudicate the land ownership of the appurtenant acres; instead it assumed "*for the purpose of th*[e]

---

[3]Because the Rio Puerco de Chama is a tributary of the Rio Chama, the *Chacon* Adjudication was consolidated with the adjudication of water rights for the Rio Chama, which is currently pending in federal court. *See State ex rel. State Engineer of New Mexico v. Aragon*, United States District Court Cause No. 69cv07941 KWR/KK. Before that adjudication was removed to federal court, the state court confirmed the *Chacon* Decree.

[4]This likely refers to Jose Jr. because Corlinda was married to Jose Jr.

[5]The *Chacon* court decreed a separate water right not at issue here that is appurtenant to 7.6 acres of land, which it identified under Froilan's name.

*Decree* that each party claimant . . . is the owner of the respective tract or tracts of land." (Emphasis added.) The *Chacon* court did not decide who owned the tracts identified on the map as having appurtenant water rights; land title questions were left open, to be resolved based on state law and, if necessary, by state courts.

{7}     Of the homestead's 114 acres owned by Corlinda, approximately 20 are among the acres identified by the *Chacon* court as having appurtenant water rights. Neither the Martinezes nor their predecessor-in-interest were claimants in the *Chacon* court proceeding, so they are not identified by name, but the Martinezes currently own some acres identified by the *Chacon* court as having appurtenant water rights to irrigate from the Acequia.

## II.     Ditch Right Ownership and the *Derecho* System

{8}     It is undisputed that Corlinda and Jose Leandro have ditch rights in the Acequia. As discussed previously, a ditch right includes, in relevant part, the right to take water from the ditch for a certain period of time. The dispute here pertains to how AMM distributes water to the holders of ditch rights—how it assigns a particular time period for taking water from the Acequia to each member of AMM.

{9}     By statute and under a 1968 stipulation in the *Chacon* Adjudication, AMM, as the community acéquia association for this Acequia, *see* NMSA 1978, § 73-2-28 (2001), has the discretion, with certain limitations discussed below, to adopt "customs, rules and regulations" regarding the distribution of water to those entitled

5

to water from the Acequia. *See* NMSA 1978, § 72-9-2 (1907). AMM adopted a distribution system that it terms the "*derecho* system," under which AMM determines the date and amount of time that each holder of a ditch right—each *parciante*—may take water from the Acequia during each irrigation cycle of roughly three weeks. These determinations are set forth in an irrigation schedule.

{10} Currently, Corlinda and Jose Leandro may take water for twenty-four and eighteen hours per cycle, respectively. Every *parciante*'s irrigation time on the Acequia derives from one of the original *parciante*'s *derechos.* For example, the *derechos* for Corlinda, Jose Leandro, and the heirs of Froilan Chacon each derive from and are fractions of Jose Sr.'s *derecho*. Jose Sr. could take water from the Acequia for forty-eight hours per cycle; when added together, the irrigation time of Corlinda, Jose Leandro, and the heirs of Froilan Chacon total forty-eight hours.[6]

{11} Corlinda's irrigation time and Jose Leandro's irrigation time have varied over the years. From 1984 to 2012, Corlinda received forty-two hours of irrigation time, and Jose Leandro was not listed as a *parciante* or on the irrigation schedule. In 2012, AMM's *parciantes* voted to add Jose Leandro as a *parciante*, after which AMM issued a new irrigation schedule that reduced Corlinda's forty-two hours of irrigation

---

[6]The dispute here involves forty-two hours of irrigation time out of the total forty-eight hours under Jose Sr.'s original *derecho*. The remaining six hours of irrigation time for the heirs of Froilan Chacon is not in dispute.

time to twenty-four hours per cycle and granted the remaining eighteen hours to Jose Leandro.

### III.    The Current Proceeding

{12}    After AMM reduced Corlinda's irrigation time, she sued AMM and the Martinezes. Three of her claims are pertinent to this appeal: (1) a claim for declaratory relief that AMM must distribute water in accordance with the *Chacon* Decree rather than the *derecho* system and an injunction to the same effect; (2) a claim for declaratory relief that she had a decreed water right for 42.2 acres and the Martinezes were not owners of any of that water right; and (3) a Fourteenth Amendment procedural due process claim under 42 U.S.C. § 1983 premised on the theory that the change in irrigation time deprived her of her water right without adequate notice and an opportunity to be heard.

{13}    The district court granted a defense motion, pursuant to Rule 1-012(B)(6) NMRA, to dismiss Corlinda's claims for declaratory and injunctive relief relating to the *derecho* system. At the heart of the district court's ruling—and this appeal—is the district court's conclusion that New Mexico courts lack the authority to readjust ditch rights so that those rights are "in proportion to the water rights of the landowners using the ditch or in proportion to the number of acres irrigated by each landowner."

7

{14} Next, in ruling on a summary judgment motion brought by AMM, the district court partially dismissed Corlinda's claim that she owned all of the 42.2 acre decreed water right. It reasoned that she only had an interest in the water right to the extent that she owned acres to which the *Chacon* Decree ascribed an appurtenant water right, which totaled "approximately 20 acres of irrigated land." In ruling on a summary judgment motion brought by the Martinezes, the district court also dismissed Corlinda's claim that the Martinezes did not own any of the 42.2-acre decreed water right. The court reasoned that "water rights are appurtenant to land; they are not owned separate from the land"; that the Martinezes made a prima facie showing that they owned land to which portions of the 42.2 acre decreed water right were appurtenant; and that the Lujans failed to rebut the Martinezes' prima facie showing.

{15} Although Corlinda's due process claim survived a summary judgment motion, it failed at trial. She argued to the district court that AMM's change in her irrigation time from forty-two to twenty-four hours deprived her of her property interest in her water right. The court determined that Corlinda did not have a legitimate claim of entitlement to forty-two hours of irrigation time because both she and Jose Leandro were entitled to part of the same *derecho*.

{16} After trial, the court granted costs to AMM for its expert witness, Mustafa D. Chudnoff, concluding that his work was reasonably necessary for the litigation. It

further granted attorney's fees to AMM, pursuant to 42 U.S.C. § 1988, for work done in defending against the Lujans' due process claim during the period of time between the denial of AMM's summary judgment motion and the entry of judgment against the Lujans on that claim because the court concluded that the Lujans frivolously pursued the claim during that time period.[7] The Lujans appeal.

## DISCUSSION

{17}     On appeal, many of the Lujans' arguments rely on legal theories rejected by the district court. Those theories involve the confusion of one of their ditch rights—specifically, their right to a particular flow of water—with their water rights—their right, under the *Chacon* Decree, to irrigate specific acres of land. As we understand the Lujans' briefs, they present five arguments: (1) that AMM's *derecho* system, which manages ditch rights, is incompatible with the determination of water rights in the *Chacon* Decree and thus AMM's water distribution system was superseded by or must conform to the identification of water rights by acre set forth in the Decree; (2) that the district court lacked subject matter jurisdiction when it determined that Corlinda was entitled to approximately 20 acres of the decreed water right and it effectively adjudicated a water right to the Martinezes; (3) that when AMM changed Corlinda's irrigation time, it deprived her of her water right without

---

[7]It also awarded attorney's fees because of the Lujans' pursuit of a retaliation claim—a claim which, apart from its relationship to the grant of attorney's fees, is not at issue in this appeal.

due process; (4) that the award of expert witness fees is not supported by Rule 1-054(D) NMRA or the record; and (5) that the award of attorney's fees is not justified. We address each argument in turn, explaining why we conclude that none warrant reversal.

**I.     The Determination of Water Rights in the *Chacon* Decree Is Not Incompatible With and Did Not Replace the *Derecho* System**

{18}     The Lujans argue that water rights, once determined based on the doctrine of prior appropriation, dictate the amount of water each landowner is entitled to have distributed from a ditch. Based on this legal theory, the Lujans contend that the *Chacon* Decree, which determined irrigation water rights along the Acequia, "replaced" the *derecho* system, the system by which AMM distributes water to those who hold both water and ditch rights. We reject the Lujans' legal theory because it is inconsistent with New Mexico precedent and statute, which recognize that water rights and ditch rights are different, derive from different sources, and are governed by different law. *See, e.g.*, *Olson*, 1994-NMSC-100, ¶ 10. The district court correctly recognized this distinction and rejected the Lujans' arguments that the *Chacon* Decree and the AMM's implementation of the *derecho* system here are incompatible and that the *Chacon* Decree dictates distribution of water from the Acequia.

{19}     For the reasons that follow, we conclude that the prior appropriation doctrine, which governs irrigation water rights, can operate in tandem with the *derecho* system used by AMM. We also conclude that the way in which irrigation water rights were

10

adjudicated in the *Chacon* Decree does not supersede or conflict with the way AMM distributes irrigation time in this case because the Decree did not determine ditch rights and the Decree recognized an acéquia association's authority to distribute based on its own customs, rules, and regulations. In explaining the reasons for our conclusions, we first discuss water rights and ditch rights separately. Second, we discuss two precedents pertaining to the dynamic between the two rights: *Holmberg v. Bradford*, 1952-NMSC-051, 56 N.M. 401, 244 P.2d 785, and *Olson*, 1994-NMSC-100. And, third, we discuss Section 72-9-2, which recognizes—and describes the scope of—the authority that acéquia and community ditch associations have to distribute water in accordance with local and community customs, rules, and regulations.

{20}     In New Mexico, water rights are determined based on the prior appropriation doctrine, *see* N.M. Const. art. XVI, § 2, under which "water rights are both established and exercised by beneficial use, which forms 'the basis, the measure and the limit of *the right to use of the water*.'" *Walker*, 2007-NMSC-038, ¶ 22 (quoting N.M. Const. art. XVI, § 3) (emphasis added); *see also* NMSA 1978, § 72-1-2 (1907) ("Beneficial use shall be the basis, the measure and the limit of the right to the use of water."). In other words, a water right is the right to use water, and each right holder is limited to a specific use, namely the beneficial use that established the right. *Walker*, 2007-NMSC-038, ¶ 22. If water is appropriated and used for irrigation—

creating an irrigation water right, as is the case here—that right is appurtenant to specified land, and "any conveyance of the land will carry the water right with it unless the water right is expressly reserved by the grantor." *Id.* ¶ 23; *accord* § 72-1-2.

{21}     In contrast, "ditch rights are derived from ownership of the ditch and an easement therein." *Olson*, 1994-NMSC-100, ¶ 10. "The physical structure of the ditch itself is real property, owned by the community who built it as tenants in common by virtue of their joint investment of capital and labor." *Id.* An interest in the physical structure of the ditch passes to successors in title to the lands of the original ditch community. *Id.* Unlike an ownership interest in the ditch itself, the interest in the flow of water through the ditch is an easement. *Id.* ¶ 11. The easement is in the water flowing from the ditch to the water user's land for a period of time in a water cycle. *See id.* ¶ 14 (stating the extent of the easement in the flow of water on the ditch in question was determined by an agreement that set each member's irrigation time); *Bounds*, 2011-NMCA-078, ¶ 4 (stating that the "amount of time during a water cycle that an individual water user may take water from the ditch" is a ditch right). In addition to having an interest in the physical ditch and an interest in the flow of water, the holder of a ditch right has an "interest in being a water user." *Wilson v. Denver*, 1998-NMSC-016, ¶ 34, 125 N.M. 308, 961 P.2d 153. Critically, none of these three interests amount to a water right. *Id.* ¶ 22. Instead, ditch rights

12

are rights specific to acéquias and other community ditches. *Olson*, 1994-NMSC-100, ¶¶ 10-11.

{22}     Two precedents from our Supreme Court—*Holmberg*, 1952-NMSC-051, and *Olson*, 1994-NMSC-100—illustrate how the two rights differ in general and identify one set of circumstances in which the two rights relate to each other. The district court relied on *Holmberg*, and on appeal the Lujans rely on *Olson*. We conclude that the district court correctly relied on *Holmberg* and that the Lujans' arguments based on *Olson* do not warrant reversal here.

{23}     In *Holmberg*, our Supreme Court rejected an argument very similar to the argument made by the Lujans here. The plaintiffs in *Holmberg* asked the Court to "readjust the shares in interest" in a community ditch "in proportion to the water rights of the land owners using said ditch, or in proportion to the number of acres irrigated by each land owner using said ditch." 1952-NMSC-051, ¶ 14. The Court concluded that the plaintiffs' proportionality theory was "not a valid contention of law." *Id.* This conclusion was based on the important distinctions between water rights and ditch rights. *Id.* ¶¶ 8-13. The Court therefore declined to adjust ditch rights to mirror water rights, *id.* ¶ 14, which is what the district court did in the case before us. We conclude that the district court correctly relied on *Holmberg*.

{24}     And we disagree with the Lujans' contention that *Olson* supports reversal. The *Olson* Court recognized one set of circumstances—not present here—in which

irrigation water rights and ditch rights are related. Specifically, the Court concluded that the owner of a ditch right may lose the right to the flow of water through the ditch to a specific tract of land if it is determined that the owner has no irrigation water right for that tract and if the purpose of the ditch easement is to distribute water for irrigation purposes. 1994-NMSC-100, ¶¶ 10-16. The members of the ditch in *Olson* had entered into a "[d]eclaration" which "allocate[d] usage time for the ditch" by specifying "the number of days of ditch usage allotted to each" tract. *Id.* ¶ 3. But, in a stream adjudication, a district court determined that the owner of a specific tract did not have an irrigation water right for that tract, and based on that determination, the district court in *Olson* eliminated from the irrigation schedule the days associated with that tract. *Id.* ¶¶ 5-8. Our Supreme Court reaffirmed the longstanding distinction between water rights and ditch rights but concluded that the distinction was not dispositive under the specific facts of the case before it. *Id.* ¶¶ 9-16. The Court explained that the "[d]eclaration" governing the irrigation schedule "creat[ed] an express easement" in the flow of water. *Id.* ¶ 11. The Court reasoned that the easement was, like any other easement, subject to the cessation of purpose doctrine: "An easement that is created to serve a particular purpose terminates when the underlying purpose for the easement no longer exists." *Id.* ¶ 13. Because the purpose of the easement in the case before it "was to transport water to particular tracts of land for irrigation" and because an irrigation water right no longer existed for the

14

tract in question, the purpose of the easement for that tract had ceased to exist. *Id.* ¶ 15. Therefore, the easement for that tract "was extinguished," and the district court did not err by eliminating from the irrigation schedule the days associated with that tract. *Id.* ¶¶ 15-16.

{25}     *Olson* is unhelpful to the Lujans because they have not provided any basis for applying the cessation of purpose doctrine. Here, unlike in *Olson*, the Lujans have not established that the purpose of the easement in the flow of water no longer exists. Specifically, the Lujans have not argued that any other party has lost an irrigation water right associated with any specific tract of land irrigated by the Acequia. Another significant distinction is that here, unlike in *Olson*, no contract or other binding document fixes specific irrigation times on the Acequia. Instead, the irrigation schedule for distributing water on the Acequia derives from the *derecho* system, a system that AMM adopted based on local traditions and customs.

{26}     The Lujans have not established that AMM lacked the authority to adopt such a system to manage the distribution of water from the Acequia. As Amicus New Mexico Acequia Association correctly points out, [8] under Section 72-9-2, community ditch and acéquia associations like AMM may use "local or community customs, rules and regulations" to "govern the distribution of water . . . to the persons entitled to water." By granting such authority to each community ditch and

---

[8]We thank Amicus New Mexico Acequia Association for its helpful brief.

acéquia association, our Legislature "recognized that each ditch system is unique and has individualized needs." *Wilson*, 1998-NMSC-016, ¶ 43.

{27}   Consistent with Section 72-9-2, the *Chacon* Decree recognizes—rather than negates—the authority of each community ditch and acéquia association to distribute water to the holders of water rights in accordance with local customs and traditions. The Decree does so explicitly; it includes a stipulation "that nothing contained in the [*Chacon*] Decree shall be construed to impair or interfere with the authority of the commissioners and mayordomo to administer and apportion, within their various community ditch associations, waters covered by the [*Chacon*] Decree in accordance with the customs, traditions and by-laws of the said community ditch associations." The Lujans argue, without citing supporting authority, that this stipulation "is a nullity" because it does not specifically refer to *derechos* or another means of water distribution. But the Lujans do not argue that the *derecho* system deviates from AMM's "customs, traditions [or] by-laws," and we therefore reject the Lujans' position.

{28}   Importantly, the Lujans have not argued that any of the limitations found in the text of Section 72-9-2 apply here. Section 72-9-2 imposes procedural and substantive constraints on the authority of acéquia and community ditch associations with respect to the distribution of water. Procedurally, the statute requires that rules and regulations be adopted by a "majority of the users," and the statute allows

modifications of customs, rules and regulations only if "so desired by the persons interested and using said custom or customs." *Id*. Substantively, the statute provides that rules and regulations may be used to govern distribution of water only if they "have for their object the economical use of water" and only if they are "not detrimental to the public welfare." *Id.* The Lujans do not argue that AMM violated the statute's procedural limitations or that the *derecho* system violates the statute's substantive limitations.

{29} The only limitation relied on by the Lujans is one that lacks support in the text of Section 72-9-2. The Lujans contend that Section 72-9-2 only applies to unadjudicated irrigation water right claims and that, once irrigation water rights are adjudicated, acéquia and community ditch associations lose their authority with respect to how water is distributed. We are not persuaded. As we have explained, our Legislature explicitly imposed limitations on the authority of acéquia and community ditch associations to distribute water, but the text of the statute includes no language suggesting that their authority only extends to unadjudicated water rights. Neither the word "unadjudicated," the phrase "before an adjudication," nor any similar language that might support the Lujans' proposed limitation appears anywhere in Section 72-9-2, and we decline to add language to the statute. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (citation omitted) (text only)); *Elite*

*Well Serv., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-041, ¶ 7, 531 P.3d 635 ("We will not read into a statute language which is not there." (citation omitted) (text only)).

{30}     Instead, the Lujans rely on an adjacent section, NMSA 1978, § 72-9-1 (1941),[9] but they have not persuaded us that this statute applies here. Critically, unlike Section 72-9-2, Section 72-9-1 does not say anything about the authority of acéquia and community ditch associations to govern the distribution of water, and Section 72-9-1 does not refer to Section 72-9-2. The Lujans have not provided any persuasive argument that the authority to distribute water that is explicitly granted—and explicitly limited—by Section 72-9-2 is also limited in some different fashion by Section 72-9-1. The Lujans focus on our Legislature's inclusion of the word "adjudication" in the final clause of Section 72-9-1, but they forge no logical or conceptual link between the subject matter governed by that clause and the subject matter governed by Section 72-9-2. We reject the Lujans' argument that, under Section 72-9-1, an acéquia or community ditch association may govern the

---

[9]Section 72-9-1 states, "Nothing contained in this article shall be construed to impair existing vested rights or the rights and priority of any person, firm, corporation or association, who may have commenced the construction of reservoirs, canals, pipelines or other works, or who have filed affidavits, applications or notices thereof for the purpose of appropriating for beneficial use, any waters as defined in [NMSA 1978, 72-1-1 [1941] in accordance with the laws of the territory of New Mexico, prior to March 19, 1907; provided, however, that all such reservoirs, canals, pipelines or other works and the rights of the owners thereof shall be subject to regulation, adjudication and forfeiture for nonuse as provided in this article."

distribution of water in accordance with local and community customs, rules, and regulations pursuant to Section 72-9-2 only if the irrigation water rights for the water in its acéquia or community ditch have not been adjudicated. Accordingly, we conclude that the adjudication of water rights in the *Chacon* Decree did not bar AMM from using its *derecho* system to distribute water in a manner consistent with Section 72-9-2.

{31} The Lujans also contend that the *derecho* system is incompatible with the doctrine of prior appropriation. However, they do not describe specific conflicts between the two and do not cite applicable authority. Instead, they rely on inapplicable New Mexico precedent in which our Supreme Court refused to recognize various water rights and doctrines because they could not be reconciled with the doctrine of prior appropriation. *See Harkey v. Smith*, 1926-NMSC-011, ¶ 10, 31 N.M. 521, 247 P. 550 (holding new appropriations of water are regulated by permits or decrees, rather than the arid region doctrine); *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 36, 135 N.M. 375, 89 P.3d 47 (holding that the pueblo water rights doctrine is inconsistent with prior appropriation); *Yeo v. Tweedy*, 1929-NMSC-033, ¶ 21, 34 N.M. 611, 286 P. 970 (holding that the rule of correlative rights is incompatible with prior appropriation); *Walker*, 2007-NMSC-038, ¶¶ 46-47 (holding that custom does not define the scope of a water right). We are unpersuaded because these precedents involve water rights rather than ditch

19

rights, which are managed under the *derecho* system and which are "governed by different rules of law" than water rights. *See, e.g.*, *Olson*, 1994-NMSC-100, ¶¶ 10-11, 14.

{32} For these reasons, the Lujans have not established that the adjudication of irrigation water rights in the *Chacon* Decree supersedes or conflicts with AMM's use of the *derecho* system to distribute water from the Acequia to the landowners involved in this litigation. Nor have the Lujans established that the *derecho* system is incompatible with the prior appropriation doctrine.

## II. The District Court Retained Subject Matter Jurisdiction Because It Did Not Adjudicate or Readjudicate Water Rights

{33} The Lujans argue that the district court overstepped its subject matter jurisdiction by entering seven orders that readjudicated water rights in the *Chacon* Decree rather than enforcing the rights that the Decree adjudicated. However, because some of the Lujans' arguments are improperly and inadequately briefed,[10]

---

[10]For several of the orders, the Lujans attempt to incorporate by reference arguments that they made to the district court, rather than making those arguments in their appellate briefs—an improper practice which we address in more detail in the last section of this opinion. The Lujans' arguments in this section suffer from other fatal flaws. For example, the Lujans make no argument to support their assertion that the court lacked jurisdiction regarding two orders: one dismissing several claims under Rule 1-012(B)(6) and the findings of fact, conclusions of law, and order. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not . . . guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). Further, the Lujans invoke four discrete doctrines (fundamental error, collateral attack, res judicata, and priority jurisdiction) without showing how the necessary elements of each doctrine are met. Because the

20

we will only review certain arguments attacking two of those orders: an order granting AMM's motion for partial summary judgment on Corlinda's interest in the 42.2-acre decreed water right and an order granting the Martinezes' summary judgment motion dismissing Corlinda's request for declaratory relief that the Martinezes have no interest in the 42.2-acre decreed water right.

{34}     The question of subject matter jurisdiction was presented to this Court in a previous appeal in this litigation. *See Lujan v. Acequia Mesa del Medio*, 2019-NMCA-017, 436 P.3d 734. In that appeal, AMM and the Martinezes argued that the district court lacked jurisdiction because it would have to readjudicate that which was adjudicated by the *Chacon* court. *Id.* ¶ 15. The Lujans argued that their claims merely required this Court to interpret and enforce the Decree. *Id*. This Court agreed with the Lujans, concluding that the district court has "jurisdiction over claims related to the enforcement of the decree—as opposed to claims seeking an adjudication of the water rights to be decreed," and this Court remanded the case for further proceedings. *Id.* ¶¶ 14, 23. In the present appeal, the Lujans argue that the district court lacked subject matter jurisdiction when it "amend[ed]" the *Chacon*

---

Lujans have not carried their burden of establishing that the district court exceeded its jurisdiction with respect to these orders, we presume that the district court did not err. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063.

Decree and "in effect[] adjudicate[ed] a 'water right' to" the Martinezes. We disagree.

{35} "We review claims related to subject matter jurisdiction de novo." *Allred v. N.M. Dep't of Trans.*, 2017-NMCA-019, ¶ 20, 388 P.3d 998. "In determining whether a court has subject matter jurisdiction, we ask whether the matter before the court falls within the general scope of authority conferred upon such court by the constitution or statute." *State ex rel. Foy v. Austin Cap. Mgmt., Ltd.*, 2015-NMSC-025, ¶ 7, 355 P.3d 1 (citation omitted) (text only). By statute, adjudication courts have "exclusive jurisdiction to hear and determine all questions necessary for the adjudication of all water rights within the stream system involved." Section 72-4-17. Once an adjudication ends with a decree, district courts, as general jurisdiction courts, have "jurisdiction over claims related to the enforcement of the decree—as opposed to claims seeking an adjudication of the water rights to be decreed." *Lujan*, 2019-NMCA-017, ¶ 14.

{36} As we understand it, the district court here limited Corlinda's interest in the 42.2-acre water right to approximately 20 acres by determining the acres of the land she owns that correspond to the acres identified in the *Chacon* Decree as having an appurtenant water right. It further dismissed the claims for declaratory relief against the Martinezes because they made a prima facie showing that they owned some of the acres to which the water right is appurtenant, and the Lujans failed to rebut that

22

showing. Therefore, the resolution of the issue before us hinges on whether the district court in the present litigation readjudicated a water right that had been adjudicated in the *Chacon* Decree when the district court in the present litigation made determinations about the ownership of some of the land that the *Chacon* Decree identified as having an appurtenant water right.

{37}    We conclude that the district court did not overstep its jurisdiction for two reasons. First and foremost, we do not read the *Chacon* Decree as determining land ownership. Instead, the *Chacon* court assumed "*for the purpose of th*[*e*] *Decree* that each party claimant or substituted party claimant is the owner of the respective tract or tracts of land." (Emphasis added.) Second, we do not read the district court's orders as adjudicating a water right to the Martinezes; the court simply dismissed the claim for declaratory relief against the Martinezes because the Lujans failed to carry their burden in opposing summary judgment. For these reasons, we do not believe the district court here adjudicated or readjudicated water rights by determining the ownership of some of the land to which the right is appurtenant. We therefore conclude that the district court did not overstep its jurisdiction in enforcing the Decree.

### III.    The Lujans Have Not Established That They Have a Property Interest Protected by Due Process

{38}    The Lujans brought a due process claim in which they argued that AMM's modification of the irrigation schedule, which decreased Corlinda's time from forty-

23

two to twenty-four hours, deprived her of her water right without notice and an opportunity to be heard. After trial, the district court denied Corlinda's claim because she did not establish that she was entitled to forty-two hours of irrigation time.[11] On appeal, the Lujans do not establish that Corlinda had a constitutionally protected property right. Because they have not carried their burden of demonstrating error, we presume the district court is correct, *see Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063, and we therefore affirm.

{39} "We review de novo whether due process has been denied." *Rayellen Res., Inc. v. N.M. Cultural Properties Rev. Comm.*, 2014-NMSC-006, ¶ 18, 319 P.3d 639. To succeed on a procedural due process claim, a plaintiff must show that (1) they were "depriv[ed] of a legitimate liberty or property interest" and (2) that they were "not afforded adequate procedural protections." *Barreras v. N.M. Corr. Dep't*, 1992-NMSC-059, ¶ 18, 114 N.M. 366, 838 P.2d 983.

{40} The Lujans fail to meet the first requirement. "'Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Tri-State*, 2012-NMSC-039, ¶ 39 (omission omitted) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "The

---

[11]The district court also ruled that Corlinda waived her procedural due process rights. However, because we affirm its ruling that Corlinda did not establish that she had a protected property right, we do not reach the merits of the waiver ruling.

definition of property centers on the concept of entitlement." *Id.* (citation omitted) (text only). The district court concluded the Lujans did not prove Corlinda was entitled to forty-two hours of irrigation time. As we have explained, her irrigation time relates to her ditch right via her easement in the flow of water; her ditch right, in turn, is distinct from her water right. The Lujans present no argument that Corlinda is entitled to or guaranteed forty-two hours of irrigation time based on her ditch right, *see Tri-State*, 2012-NMSC-039, ¶ 39; *Roth*, 408 U.S. at 578 (denying procedural due process protections when the property right was not guaranteed to the plaintiff by rule, statute, or contract), and they therefore have not carried their burden of establishing that the district court erred. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8.

**IV.    The District Court Acted Within Its Discretion to Grant Expert Fees**

{41}    The Lujans appeal the district court's award of costs for fees paid by AMM to its expert witness, Mustafa D. Chudnoff. The Lujans argue that: (1) it was improper to award expert fees when Mr. Chudnoff did not testify in person or by deposition; and (2) the court lacked support in the record when it determined that he was reasonably necessary for the litigation. We are not persuaded by either argument.

{42}    Rule 1-054(D) governs the district court's award of costs. *Andrews v. U.S. Steel Corp.*, 2011-NMCA-032, ¶ 32, 149 N.M. 461, 250 P.3d 887. The rule allows recovery for "expert witness fees for services as provided by [NMSA 1978, Section 38-6-4(B) (1983)] or if the court determines that the expert witness was reasonably

necessary to the litigation." Rule 1-054(D)(2)(g). Section 38-6-4(B) allows fees for an expert "who testifies in the cause in person or by deposition."

**{43}** A different standard of review governs each of the Lujans' arguments. We review their first argument de novo because it presents a question of law about "[w]hether the district court properly interprets Rule 1-054(D) in making its award." *Andrews*, 2011-NMCA-032, ¶ 32. We review their second argument for an abuse of discretion because they challenge "the necessary and reasonable costs awarded by the district court." *Id.* "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted).

**{44}** As to their first argument, the Lujans rely solely on *Fernandez v. Española Pub. Sch. Dist.*, 2004-NMCA-068, ¶ 11, 135 N.M. 677, 92 P.3d 689, *aff'd* 2005-NMSC-026, 138 N.M. 283, 119 P.3d 163, for its holding that a district court can only grant expert fees if the expert testified in person or by deposition. But the Lujans ignore that our Supreme Court amended the rule after *Fernandez*, and that the rule now expressly allows a district court to grant expert fees "if the court determines that the expert witness was reasonably necessary to the litigation." Rule 1-054(D)(2)(g); *see Andrews*, 2011-NMCA-032, ¶ 33 (recognizing the 2008 amendment).

{45} Turning to the Lujans' second argument, we reject their contention that the district court's finding that Mr. Chudnoff was reasonably necessary for the litigation is "completely unsupported by the record."[12] AMM used an affidavit and exhibits prepared by Mr. Chudnoff in two of its summary judgment motions (both of which the court granted) and included his work in one of its trial exhibits. Further, the Lujans deposed Mr. Chudnoff and used parts of his deposition in their motion to reconsider various orders granting summary judgment. In light of this, we see no basis for concluding that the district court abused its discretion when it concluded that Mr. Chudnoff's work was necessary and awarded costs on that basis.

## V.     The Lujans Have Not Shown That the District Court Erred by Awarding Attorney's Fees

{46} The district court granted AMM attorney's fees under 42 U.S.C. § 1988 because the Lujans continued to pursue their due process and retaliation claims after the court granted two summary judgment motions (those discussed above in the section on subject matter jurisdiction) that dealt with the underlying property interest for the due process and retaliation claims. As we understand it, on appeal, the Lujans make three discrete arguments. First, the two summary judgment orders regarding

---

[12]The Lujans also imply that the district court was required to make explicit findings in its orders that it relied on Mr. Chudnoff's expertise in the litigation. However, the Lujans cite no supporting authority, *see In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329, and we see nothing in the rule itself that imposes such a requirement.

their property interest underlying their due process claim were interlocutory and they could not reasonably know their surviving claims would be unsuccessful. Second, the district court applied the incorrect law for the two summary judgment orders, and thus abused its discretion when it granted attorney's fees. Finally, the district court's order was not based on particularized facts but rather on "mere restatement[s] of the standard" for attorney's fees. We conclude that none of these arguments warrant reversal.

{47} The first and second arguments are not preserved. To show that an issue is preserved for appeal, a party must establish that "a ruling or decision by the trial court was fairly invoked." Rule 12-321(A) NMRA. The Lujans do not identify any place in the record where they made these arguments to the district court, *see* Rule 12-318(A)(4) NMRA, and we have found no indication of preservation in the record. Because the Lujans have not asked us to apply any of the exceptions to the preservation rule, *see* Rule 12-321(B), we decline to reach the merits of their first two arguments.

{48} Turning to the Lujans' final argument, we presume the district court did not err—i.e., that it correctly applied the legal standard recited in its order to the relevant facts. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8. The Lujans bear the burden on appeal of establishing otherwise, *see id.*, but they have not done so. They have not identified anything in the record that establishes that the district court failed to

28

consider any relevant fact. Nor have they cited any authority for the proposition that the district court's order must include every fact it considered, and we therefore assume no such authority exists. *See Nguyen v. Bui*, 2023-NMSC-020, ¶ 19, 536 P.3d 482.

**VI.** **We Decline to Review the Arguments the Lujans Seek to Incorporate by Reference**

{49}     Throughout the section of the Lujans' brief in chief in which they argue that the district court lacked jurisdiction, they attempt to incorporate by reference arguments that they made in the district court instead of making those arguments in their appellate briefs. We will not allow this because we conclude that it is a tactic being used to "avoid[] the page limitations placed on briefs by the appellate rules," which contemplate that the appellate court decide "the issues, argument, and authority contained in one manageable set of briefs." *State v. Aragon*, 1990-NMCA-001, ¶ 4, 109 N.M. 632, 788 P.2d 932. We granted the Lujans leave to exceed the usual 11,000 word limit for a brief in chief by 4,500 words. Although the Lujans filed a brief in chief that is itself less than 15,500 words, they have attempted to incorporate by reference an additional fifty-one pages of arguments that they made in the district court. This circumvention of the page limits is "an unacceptable briefing practice," and we therefore decline to address the arguments the Lujans attempt to incorporate by reference. *United Nuclear Corp. v. State ex rel. Martinez*, 1994-NMCA-031, ¶ 5, 117 N.M. 232, 870 P.2d 1390.

29

**CONCLUSION**

{50}     We affirm.

{51}     **IT IS SO ORDERED.**

_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**JANE B. YOHALEM, Judge**